**William J. DALTON, Appellant,**

v.

**Paul S. McNEILL, Jr., Director, Missouri Department of Revenue, Respondent.**

**No. WD 37549.**

Missouri Court of Appeals, Western District.

July 1, 1986.

Ken Seck, Leon B. Seck, Seck & Seck, Overland Park, Kan., for appellant.

William Webster, Atty. Gen., James A. Chenault, III, Asst. Atty. Gen., for respondent.

Before SHANGLER, P.J., and DIXON and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

The appellant Dalton was arrested and cited for the violation of a municipal ordinance which prohibited the physical control of a motor vehicle by a person under the influence of intoxicating liquor. His license to drive was suspended under the procedures of §§ 302.500 to 302.540, RSMo Cum.Supp.1984, and Dalton appeals the affirmance of the order of suspension on trial de novo.

The manager of a McDonald's restaurant reported that a car was stopped in the drive-through lane, engine running, with the man inside "passed out behind the wheel." It was then about one in the morning. Officer Gardner was first on the scene and found Dalton behind the wheel of the car, "head against the steering wheel, obviously passed out." The engine continued to run, and the gearshift was in the drive position. He turned off the ignition and, with difficulty, roused Dalton. Gardner was then on duty as a supervisor of a DWI project, and hence called for another officer to assist. Gardner did observe that the clothing of the car occupant was mussed, and a strong odor of alcohol was about him. Inside the car, the floor was strewn with beer cans, and a quantity of beer was spread on the floorboard so that the interior gave off an odor of beer. Gardner reached the opinion that Dalton was intoxicated.

Officer Matt then arrived at the scene. He administered two field sobriety tests: the hand to nose and straight line balance routines, neither of which Dalton was able to perform. His fingertip missed the nose on both attempts, and he stumbled to fall as he attempted the balance procedure. A strong odor of alcohol persisted on his breath and clothing. He was unable to understand directions without several repetitions. His eyes were noticeably dilated. Officer Matt then advised Dalton he was under arrest "for being in physical control of a motor vehicle while under the influence of intoxicating liquor, and charged him formally with the violation of Kansas City, Missouri ordinance § 34.116(b). Dalton was then taken to the police station where Officer Matt administered a breathalyzer test. The analysis registered a blood alcohol concentration of nineteen hundredths of one percent.

On appeal, Dalton contends the suspension procedures under §§ 302.500 to 302.-540 do not apply to *nonmoving* violations and that, cognately, the probable cause requirement of § 302.505 was not satisfied. To sustain these contentions, Dalton cites provisions from §§ 302.500 to 302.540 and

of §§ 577.001 to 577.060, RSMo Cum.Supp. 1984.

The first enactment [§§ 302.500 to 302.-540] delineates the administrative procedure for the suspension and revocation of a driver's license by the Director of the Department of Revenue. That enactment provides for the suspension of revocation upon the administrative determination that the person was arrested upon probable cause to believe he was *"driving* a motor vehicle while the alcohol concentration in the ... blood or breath was thirteen-hundredths of one percent or more by weight of alcohol in his blood." [§ 302.505.1, emphasis added]. That enactment also requires a law enforcement officer who arrests any person for the violation of § 577.010 [*Driving* while intoxicated] or of § 577.012 [*Driving* with excessive blood alcohol content] or of a county or municipal ordinance "prohibiting *driving* while intoxicated or a county or municipal alcohol related traffic offense" in which the alcohol concentration in the blood or breath was thirteen-hundredths of one percent or more by weight to report that enforcement action to the department of revenue. [§ 302.510.1, emphasis added].

The second enactment, offenses against public safety chapter 577, declares—as noted—that a person who operates a motor vehicle while in an intoxicated condition commits the crime of *"Driving* while intoxicated" [§ 577.010, emphasis added], and a person who operates a motor vehicle with ten-hundredths of one percent or more by weight in the blood commits the crime of *"Driving* with excessive blood alcohol content." [§ 577.012, emphasis added]. Another section of offenses against public safety chapter 577, for purposes of prior offender and persistent offender prosecutions, defines *intoxication related offense* as: *"driving* while intoxicated, *driving* with excessive blood alcohol content, or *driving* under the influence of alcohol or drugs in violation of state law." [§ 577.-023.1(1), emphasis added].

It is the sense of argument on appeal that *driving* as used in these enactments means *moving,* and since the vehicle Dal-ton occupied at the time of arrest was not moving, there was no probable cause to believe he was driving in the condition of blood alcohol requisite to induce arrest under § 302.505.1. It is the sense of the argument on appeal, *a fortiori,* that a conviction for the physical control of a motor vehicle by a person, albeit intoxicated, cannot activate the suspension or revocation procedures of §§ 302.500 to 302.540 where the vehicle is not in motion.

It is so that the term *driving* is not defined in the suspension and revocation of license §§ 302.500 to 302.540. But the purpose of that enactment is to deny the motor vehicle license privilege to a person arrested on probable cause [and later validated] of driving while intoxicated or of the violation of an alcohol related offense in the proscribed condition of blood alcohol concentration, and not to define substantive offenses. That is left to the state, court and municipal legislatures. § 302.510. The *probable cause* § 302.505 requires to be shown as prelude to the verification of the blood alcohol concentration requisite to invoke the suspension and revocation procedures is the reasonable officer belief that the person taken in arrest has violated the particular statute [§ 577.010 or § 577.012], or the county ordinance, or the municipal ordinance—in this case, § 34.116(b). *Collins v. Director of Revenue,* 691 S.W.2d 246, 251 [8, 9] (Mo. banc 1984). The *probable cause* which precedes arrest, report to the department of revenue and suspension or revocation under §§ 302.500 to 302.540, therefore, is the reasonable officer belief that at the time the licensee was in violation of the traffic offense—*as defined by the legislative* enactment. § 302.510; *Collins v. Director of Revenue,* 691 S.W.2d at 252 [11, 12].

It is the definition the substantive offense accords to *driving while intoxicated* and to an *alcohol related traffic offense,* therefore, which determines whether an arrest was for probable cause, and so activates the report to the Department of Revenue and the suspension and revocation procedures under §§ 302.500 to 302.540.

In the definition of the substantive crimes of *driving while intoxicated* [§ 577.010] and *driving with excessive blood alcohol content* [§ 577.012] the terms *drive, driving, operates, operating* are given the meaning: "physically driving or operating *or being in actual physical control of a motor vehicle.*" [§ 577.001, emphasis added]. And actual *physical control* occurs under that definition even though the machine stands motionless, so long as the person keeps the vehicle in restraint or in a position to regulate its movements. *State v. O'Toole,* 673 S.W.2d 25, 27 [3, 4] (Mo. banc 1984).

■ The ordinance enacted by Kansas City [§ 34.116(b)], under which Dalton was charged and which activated the official report procedures to the department of revenue and suspension of license to drive under §§ 302.500 to 302.540, renders it unlawful for an intoxicated person "to operate or be in actual physical control" of a vehicle. The arrest, therefore, was for the violation of a "municipal alcohol related traffic offense," and so was a basis for the suspension of license under § 302.510. The *actual physical control* under the ordinance, as under the statutes, occurs even though the machine stands motionless, so long as the person keeps it in restraint or in a position to regulate its movements. *City of Kansas City v. Troutner,* 544 S.W.2d 295, 300[12] (Mo.App.1976).

The contention on appeal, therefore, that the suspension or revocation procedures of §§ 302.500 to 302.540 appertain only to moving violations is denied.

■ The appeal also poses the cognate claim of error, that the officers were without probable cause to believe that at the time of arrest Dalton was in a condition of blood alcohol concentration of at least thirteen-hundredths of one percent, and hence the arrest and consequent suspension of license were without sanction of law.

The *probable cause* to arrest for the violation of any statute, or county ordinance, or municipal ordinance which activates the suspension and revocation procedures of §§ 302.500 to 302.540, however, is the reasonable officer belief that the statute, or ordinance, *as legislatively defined in that particular enactment,* has been violated. Where, therefore, the alcohol related traffic offense prescribes the degree of intoxication as an element of offense [as in § 577.012], then the arrest can proceed validly only upon probable cause to believe that the traffic law violator was in that degree of intoxication when he acted. *Schranz v. Director of Revenue,* 703 S.W.2d 912, 913[1] (Mo.App.1986). Where the alcohol related traffic offense prescribes only intoxication, but no degree, as an element of offense [as in § 577.010 and in ordinance § 34.116(b)], the arrest proceeds validly upon probable cause to believe that the traffic law violator was intoxicated, whatever the degree. *Collins v. Director of Revenue,* 691 S.W.2d at 251[8, 9]. In such a case, probable cause to arrest exists "where the police officer observes a traffic violation or unusual operation of a vehicle and upon stopping the motorist, indications of alcohol consumption are noted." *Schranz v. Director of Revenue,* 703 S.W.2d at 913[1]. The ordinance on which the officers acted to take Dalton in arrest prohibited the physical control of a motor vehicle by a person under the influence of intoxicating liquor. The observed conduct of the occupant Dalton: passed-out behind the wheel, engine active, the transmission in drive, the car stopped in a traffic lane, the occupant and car interior reeking of beer, the beverage containers strewn inside, the antics of the occupant when roused, the objective signs of intoxication observed by the officers, and the inability of the occupant to perform even rudimentary movements sufficed for the reasonable belief of the officer that the city ordinance was violated.

The judgment is affirmed.

All concur.