**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Otis SPAIN, Defendant/Appellant.**

No. 53969.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 1, 1988.

Joseph A. Fenlon, Jr., Gregory G. Fenlon, Clayton, for defendant/appellant.

George A. Peach, Circuit Atty., Katie Trudeau, Asst. Circuit Atty., St. Louis, for plaintiff/respondent.

SATZ, Judge.

The trial court found defendant guilty of driving while intoxicated, § 577.010 RSMo 1986, and sentenced him to 30 days confinement. He appeals. We affirm.

On April 23, 1987, Donald Komor, a St. Louis City police officer, observed a 1977 white Cadillac fail to heed two stop signs while traveling north on Clara Ave. The Cadillac was being driven on the wrong side of the road. After following the car onto Ashland Ave., officer Komor pulled the car over and approached defendant, the driver and sole occupant of the car. Upon request, defendant stepped out of the car. Officer Komor detected a strong smell of alcohol on defendant's breath. Defendant's speech was slurred, and his gait was unsteady as he walked to the rear of the vehicle. Defendant refused to perform field sobriety tests when asked. Officer Komor placed defendant under arrest for driving while intoxicated. Defendant was then transported to two successive police stations, where officers made fruitless attempts to administer breathalyzer tests to defendant. Subsequently, defendant was

tried, found guilty of driving while intoxicated, and this appeal followed.

■ Defendant first attacks the State's opening statement. Defendant was charged by information with committing the offense "of driving while intoxicated, ... in that ... [he] operated a motor vehicle while under the influence of alcohol." At the non-jury trial, the prosecutor's opening statement tracked the information:

The State will prove beyond a reasonable doubt by competent evidence that the Defendant on the 23rd day of April in the 5800 block [sic—5500 block] of Ashland in the City of St. Louis operated a motor vehicle while under the influence of alcohol.

This statement, defendant argues, is nothing more than a "mere recital of the information", and, without more, it is fatally defective. In its opening statement, defendant contends, the State is not only required to recite the facts to be relied upon for conviction but also is required to state the manner in which these facts are to be shown. The opening statement here, defendant argues, did not meet this latter requirement and, therefore, defendant contends, the trial court erred in denying his motion for a "directed verdict" made at the close of the opening statement. We disagree.

The State is required to make an opening statement in the trial of a criminal offense. Rule 27.02(d); § 546.070(1) RSMo 1986. The purpose of the opening statement, however, has been variously stated and, frequently, appears in convoluted language. Thus, it has been stated:

... [W]e have no doubt that State's counsel has the duty to state to the jury the evidence upon which the State relies for a conviction, so that a defendant may be apprised of the facts and the manner in which the facts are to be shown, and may consequently be enabled to marshall whatever evidence he can in his own defense. *State v. Deppe,* 286 S.W.2d 776, 780 (Mo.1956).

And, more recently, it has been stated:

The purpose of the [opening statement] is to advise the [fact finder] of the facts which the State intends to prove and thereby inform the defendant of the contemplated course of prosecution so as to fairly enable the defendant to meet the assertion. *State v. Masters,* 530 S.W.2d 28, 30 (Mo.App.1975).

Sensibly read, this language means the opening statement in a criminal case in Missouri has a twofold purpose: (1) to tell the fact finder what the facts will be and (2) to tell the defendant *the manner* in which the facts are to be proved. The first purpose makes sense. It enables the uninformed fact finder to hear the facts stated in an organized and coherent fashion prior to the evidence being adduced, and, in turn, it insures the ability of the fact finder to understand the subsequent trial. More important, perhaps, it makes sense to grant the trial court the power to enter a judgment of acquittal if, in the opening statement, the State fails to recite facts sufficient to prove its case. This power is designed to avoid unnecessary time and expense in prosecutions that have no merit. *See generally,* 75 A.L.R.3d 649, *Power of the Trial Court to Dismiss Prosecution or Direct Acquittal on Basis of Prosecutor's Opening Statement* (1972).

Missouri is one of a small minority of jurisdictions that accept the second stated purpose—to advise the defendant of the manner in which the prosecution intends to prove its case. See 75 A.L.R.3d at 668–72. This limited acceptance is understandable. The second stated purpose simply makes little or no sense.

Prior to our present discovery rules, the defendant may have needed the State to present him a road map of its case in opening statement. Our present rules, however, give the defendant all the tools necessary to determine, prior to trial, both the facts of the State's case and the manner in which these facts are to be proved. Implicitly, our courts have acknowledged the lack of real meaning in the second stated purpose. Thus, research has disclosed no case in which our courts have reversed a conviction because the opening statement fails to go beyond a recital of the facts necessary to support a conviction.

On the contrary, even those courts stating that a purpose of the opening statement is "to inform the defendant of the contemplated course of prosecution" obviate this purpose by also stating:

> The ... opening statement ... will be sufficient if, when aided by the inferences reasonably to be drawn therefrom, the defendant is informed of the charges against him. *State v. Masters, supra,* 530 S.W.2d at 30.

More important, our Supreme Court has consistently stated:

> 'The trial court in a criminal prosecution has the power to direct a verdict on the opening statement of prosecuting counsel; but this power should be exercised only when it clearly and affirmatively appears from the statement that the charge against [the] accused cannot be sustained under any view of the evidence consistent with it, . . . .' *State v. Gray,* 423 S.W.2d 776, 786 (Mo.1968); *see, e.g. State v. Herring,* 502 S.W.2d 405, 409 (Mo.App.1973).

Thus, regardless of statements made in dicta, an opening statement will withstand a motion for judgment of acquittal, for directed verdict or to dismiss if it contains facts sufficient to make a submissible case. *See, e.g., State v. Gray,* supra.

Here, the State's opening statement, although admittedly brief, does state enough facts to make a submissible case. Therefore, the trial court properly denied defendant's motion for a "directed verdict."

However, even if defendant's asserted requirements for the opening statement are correct, he still would not prevail. We will not reverse a conviction because of a defective opening statement absent a showing of prejudice to the defendant. *See, e.g., State v. Deppe, supra,* 286 S.W.2d at 780. Here, defendant failed to show that he was prejudiced. This failure is understandable. From the opening statement, there can be no doubt defendant understood the State

intended to show he was driving while intoxicated at the stated place and time. Moreover, defendant knew that no chemical tests were completed. Therefore, it would be reasonable for him to infer the State would rely primarily on the testimony of the arresting officer to prove its case.

Defendant next contends the State failed to prove that venue of this crime was within the City of St. Louis, and, therefore, he argues, he is entitled to a judgment of acquittal. Specifically, defendant contends the State failed to prove the place he was arrested, the 5500 block of Ashland Ave., is located in the City of St. Louis. We disagree.

▮ Admittedly, none of the State's witnesses testified that defendant was arrested while driving in the City of St. Louis. However, the arresting officer was a St. Louis City police officer who was on duty and was assigned to the Seventh District. He first observed the car driven by defendant on Clara Ave., then saw defendant fail to heed stop signs at the intersection of Clara and St. Louis Ave. and at the intersection of Clara and Labadie Ave. After defendant turned off Clara, he was arrested on the 5500 block of Ashland Ave. From there, defendant was transported by a St. Louis Police Department cruiser to the Seventh District station and later was taken to the Eighth District station. The streets referred to—Clara, St. Louis, Labadie and Ashland—are all prominent streets in the City of St. Louis. The Seventh and Eighth Police Districts are commonly known to residents of St. Louis. The common knowledge of these facts permits us to take judicial notice of them, *see, e.g. State v. Valentine,* 506 S.W.2d 406, 410–411 (Mo. 1974); *State v. Morgan,* 645 S.W.2d 134, 136 (Mo.App.1983); and these facts are sufficient to establish circumstantially that the crimes took place in the City of St. Louis. *State v. Morgan, supra* at 136.[1]

---

1. The location of these streets in the City of St. Louis could readily be determined by reference to an official map of the City. The Federal Rules of Evidence permit judicial notice to be taken of facts which are either "(1) generally known within the territorial jurisdiction of the trial court or (2) *capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."* (Emphasis added)

Fed.R.Evid. 201(b) (1988).

■ Defendant also contends there was insufficient evidence to support the trial court's finding that he was intoxicated. We disagree.

We view the evidence and inferences in the light most favorable to the State and disregard all contrary evidence and inferences. *E.g. State v. Liebhart,* 707 S.W.2d 427, 428 (Mo.App.1986). Here, the arresting officer testified that defendant drove on the wrong side of the street, failed to heed two stop signs, had slurred speech, an unsteady walk and a strong odor of alcohol on his breath. This was more than sufficient evidence to support a finding of intoxication. *See, e.g., State v. Hopper,* 735 S.W.2d 429, 430 (Mo.App.1987); *State v. Ruark,* 720 S.W.2d 453, 454 (Mo.App.1986). The lack of a chemical sobriety test and of the officer's opinion about intoxication does not diminish the probative values of this evidence. *See, State v. Fisher,* 504 S.W.2d 281, 283–84 (Mo.App.1973). In considering the State's evidence, the trial court is not required to suspend its common sense; nor are we.

■ As his final point, defendant attacks an evidentiary ruling of the trial court. After his arrest, defendant was transported to two police stations, in order to take breathalyzer tests. Over defendant's objections, the trial court permitted testimony by Officer Komor and the two officers who attempted to administer the tests. In each case, the officer testified, defendant was shown the proper technique, but he failed to follow directions and failed to form a tight seal with his lips around the tube attached to the measuring machine. Defendant blew around the tube; consequently, the machine was unable to analyze his breath for alcohol content. One of the officers testified that "[defendant] appeared to be consciously making an effort to beat the machine."

Defendant contends the trial court improperly permitted the officers to testify about their attempts to conduct the breathalyzer tests. This testimony, defendant argues, was an attempt to show defendant's refusal to take the test, and, the admission of defendant's refusal, defendant argues, is prejudicial error.

Defendant relies on *City of St. Joseph v. Johnson,* 539 S.W.2d 784 (Mo.App.1976). In that case, the defendant expressly refused to take the breathalyzer test, an option then available under § 564.444 RSMo 1969. The defendant's refusal was admitted into evidence over defendant's objection. On appeal, the admission was held to be prejudicial error. The probative value of the refusal, the court said, was outweighed by its prejudicial effect. *Id.* at 787.[2]

However, in *State v. Long,* 698 S.W.2d 898, 902 (Mo.App.1985), this Court distinguished the *Johnson* case and held the admission of the defendant's refusal to take the test was harmless error. The Court stated:

Although it has been held to be error to admit such evidence, *City of St. Joseph v. Johnson,* 539 S.W.2d 784 (Mo. App.1976), such error is harmless where, as here, other evidence of guilt is strong. *State v. Bellew,* 586 S.W.2d 461 (Mo.App. 1979). Moreover, the Supreme Court of the United States has recognized that evidence concerning a driver's refusal to take a sobriety test "is similar to other circumstantial evidence of consciousness of guilt, such as escape from custody and suppression of evidence." *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 921, 74 L.Ed.2d 748 (1983).

This reasoning is applicable here.

JUDGMENT AFFIRMED.

SMITH, P.J., and STEPHAN, J., concur.

---

**2.** Under the most recent statutory amendment, evidence of a defendant's refusal to take a breathalyzer test is admissible in a driving while intoxicated case. Section 577.041.1 RSMo Supp. 1987. (Effective September 28, 1987) Defendant's trial here took place before the amendment took effect. Therefore, we consider his contention under prior law. This Court has held, however, that after the amendment's effective date, the *Johnson* case, *supra,* is no longer applicable. See *State v. Stevens,* 757 S.W.2d 229 (Mo.App.1988).